**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)**

| | |
|---|---|
| **PRIVATE IDENTITY LLC** <br> 13331 Signal Tree Lane <br> Potomac, Maryland 20854 <br><br> Plaintiff, <br><br> v. <br><br> **SCOTT EDWARD STREIT** <br> 2415 South Boulevard <br> Dallas, TX 75215 <br><br> and <br><br> **COMPUTER SCIENCE INNOVATION, LLC** <br> 2415 South Boulevard <br> Dallas, TX 75215 <br><br> SERVE:  Scott Streit, Managing Member <br> 520 Mariah Bay Dr. <br> Heath, TX 75032 <br><br> Defendants. | Case No.: _____ |

**COMPLAINT FOR MISAPPROPRIATION OF TRADE SECRETS,
COPYRIGHT INFRINGEMENT, AND RELATED CLAIMS**

The Plaintiff, Private Identity LLC ("Private Identity"), brings this action for trade secrets misappropriation, copyright infringement, and related claims against defendants Scott Streit ("Scott") and Computer Science Innovation, LLC ("CSI") (together, "Defendants"), and for its reasons states as follows:

**STATEMENT OF THE CASE**

1. Private Identity has invested heavily over many years developing proprietary algorithms and software code to execute them for use in predicting stock value and making

trades in equity markets.

2. The Defendants—one of whom (Scott) is the former Chief Technology Officer of Private Identity who assisted with developing the stock trade code before he was terminated by the company for theft and fraud—conspired to steal Private Identity's algorithms and code, which they are now using in connection with and/or have licensed to a series of Delaware entities that together formed a hedge fund that use the code to assist with their trades.

3. This Complaint seeks to hold the Defendants individually and jointly accountable for their knowing, willful, and collaborative theft of Private Identity's trade secrets, their direct and contributory infringement of Private Identity's copyright to the code, and the substantial damage to Private Identity that their actions have caused and, unless enjoined, will continue to cause.

## PARTIES

4. Plaintiff Private Identity is a limited liability company organized under the laws of Delaware that maintains its principal place of business in Potomac, Maryland. Private Identity, among other things, uses a proprietary code to make trades in the equity markets. Private Identity owns U.S. Copyright Registration No. TX 9-524-048 for the source code that incorporates the Proprietary Trading Algorithms.

5. Defendant Scott Streit is an individual who resides in Texas. Scott was formerly an employee of Private Identity, and he once owned a minority membership interest in the company.

6. Defendant Computer Science Innovation, LLC ("CSI") is a limited liability company organized under the laws of Texas. Scott is CSI's resident agent and, upon information and belief, holds the largest membership interest in the entity.

**JURISDICTION AND VENUE**

7. The Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action arises from a violation of the laws of the United States.

8. The Court is authorized to and should exercise supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367 because each of the state law claims is so related to the federal claims that they form part of the same case or controversy under Article III of the U.S. Constitution.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Maryland is the district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated. Defendant Scott Streit was residing in Maryland on the date that he stole Private Identity's stock trading code, and co-Defendant, CSI acted through Streit while he was physically in Maryland, and both Streit and CSI accessed and used Server 20 while it was physically located in Maryland..

10. CSI knowingly participated in a scheme centered on a Maryland-based company with the misappropriation occurring in Maryland. Moreover, upon information and belief, CSI maintained its principal place of business at 16487 Frederick Road in Woodbine, Maryland, during the period when a substantial part of the events and actions that form the basis for this Complaint occurred.

**FACTS COMMON TO ALL COUNTS**

11. Scott and an individual named Michael Pollard ("Pollard") co-founded Private Identity in 2017. Scott was also employed by Private Identity, first as the company's Chief Scientific Officer and later as its Chief Technology Officer.

12. Among other things, Private Identity was formed for the purpose of leveraging

3

machine learning technology, and it deployed some of that technology to develop a series of proprietary stock trading algorithms that can suggest trades in the equity markets.

13. One of Scott's primary roles and responsibilities at Private Identity was to assist with designing, implementing, and maintaining those algorithms and the source code that used them. Scott was also responsible for maintaining that source code on a secure Private Identity server and for ensuring that it was accessible only to specifically authorized Private Identity employees and contractors who were retained or hired to assist with the development of the algorithm code.

14. Over time, Private Identity spent substantial sums of money and invested substantial engineering effort to develop and refine three proprietary trading algorithms (the "Proprietary Trading Algorithms") and the source code that implements them. In or about 2018, and Private Identity began testing those algorithms in the equity markets and then executing live trades using the resulting code.

15. The Proprietary Trading Algorithms rely on Private Identity's proprietary implementation code, proprietary feature engineering approaches, proprietary model architecture and hyperparameters, and proprietary training pipelines, thresholds, and post-processing logic. Private Identity's integrated codebase, a copy of which resided on Server 20 when Defendants stole it, orchestrates these algorithms and components into concrete trading signals that can be executed in the securities markets.

16. Private Identity kept a full copy of the Proprietary Trading Algorithms on a computer server named "Server 20," which Private Identity provided to Mr. Streit for his use during the period when he worked for the company developing the source code that would implement the Proprietary Trading Algorithms.

17. Server 20 was a physical server in the possession, custody, and control of Scott Streit—upon information and belief, in Mr. Streit's residence in Maryland—at least until 2024, when he moved to Texas.

18. Private Identity maintained reasonable efforts to preserve the secrecy of Server 20 and the code maintained on it, including by requiring Streit and other employees to comply with strict technical, physical, and contractual controls. Maintaining the secrecy of the code, in fact, was a top priority of Private Identity and was supposed to have been a core duty of Scott's position at the company. This included, without limitation, the implementation of multiple, layered technical, physical, and contractual controls to maintain the secrecy of its trading algorithms and related source code hosted on Server 20. Access to Server 20 was restricted to a small set of identified, authorized users with a business need to know, and all such users were bound to written non-disclosure agreements with strict confidentiality obligations.

19. While Private Identity did not know it at the time, on information and belief, Scott, with the knowledge, participation, and/or assistance of Scott's son, Brian Streit, and Scott's attorney, Jorge Valdes, began using Private Identity's Proprietary Trading Algorithms in late 2021 or early 2022 to trade one or more of their own accounts without Private Identity's permission.

20. These unauthorized trades significantly eroded the market advantage uncovered by the algorithms, making Private Identity's subsequent trades based on the same algorithms unprofitable. As a result, Private Identity was forced to cease trading based on the Proprietary Trading Algorithms, depriving Private Identity of significant future profits.

21. On July 26, 2023, Private Identity fired Scott because of misconduct, including theft and fraud, while working for Private Identity.

22. Following his firing, Private Identity ordered Mr. Streit to return all company property in his possession, including Server 20, which contained the source code that included the Proprietary Trading Algorithms.

23. Scott, however, refused to do so, claiming through his attorney, Valdes, that he did not have possession of Server 20.

24. Scott's denials, however, were lies. At the time he represented that he did not possess Server 20, he did, in truth and fact, possess it and was accessing and using the source code.

25. Scott even hired a former Private Identity computer programmer, who had also played a major role in developing the source code that contains the Proprietary Trading Algorithms, to further refine Private Identity's code, thereby creating a derivative work of the stolen Private Identity's stock trading code.

26. Scott's post-termination theft of the code and related actions were accomplished through, for, and by Scott's entity and co-Defendant, CSI.

27. Upon information and belief, it was CSI that Scott was directing and acting through in retaining the services of Private Identity's former code developer for purposes of using the stolen code.

28. Because Scott is the majority owner of CSI and its managing member, his knowledge is also that company's knowledge.

29. Scott also conspired with his son, Brian, and his lawyer, Valdes, to profit from the stolen code. Brian was aware of Scott's theft and provided input and assistance in the scheme to steal it, refine it, and use it to make a profit.

30. Moreover, Scott and, upon information and belief, Valdes and several other

6

individuals established and are co-owners and/or are managing three Delaware entities that were formed to monetize the stolen Private Identity code.

31. One of those entities is called Quant Signals Trading Management, LLC ("QSTM"), another is called Quant Signals Trading GP, LLC ("QSTGP"), and the third is called Quant Signals Trading Fund, LP ("QSTF") (collectively, the "Quant Trading Entities").

32. Upon information and belief, QSTM manages the operations of QSTF, and QSTGP is the general partner of QSTF.

33. QSTGP is managed by Scott's attorney, Valdes, whom Scott assisted by providing the stolen Private Identity stock trading code (and the Proprietary Trading Algorithms) for use by one or more of the Quant Trading Entities.

34. In fact, QSTF is a pooled investment hedge fund that solicits investments from accredited investors for the purpose of using those funds to engage in stock trading that relies on Private Identity's source code and algorithms that Defendants Scott and CSI stole.

35. QSTF promotes to prospective investors that "its" (but really, Private Identity's) code provides "a cutting-edge application that leverages a unique blend of economic principles and advanced artificial intelligence to deliver accurate upward and downward market prediction." QSTF touts the code's effectiveness, ability to adapt to fluctuating market dynamics, and capacity to anticipate market downturns and, therefore, to provide essential guidance during periods of market decline.

36. In October of 2025, QSTF reported in offering materials filed with the SEC that it recently received $750,000 in investments by accredited investors for the purpose of engaging in trades.

37. Private Identity's Proprietary Trading Algorithms and the source code that

7

orchestrates them into concrete trading signals only have value to the extent they are not widely known. If other investors, such as the Defendants, pick up on the trading signals generated by the Proprietary Trading Algorithms and trade on those signals first, then those trades will almost immediately erode the market advantage uncovered by the algorithm.

## COUNT 1
### (Violation of the Defend Trade Secrets Act: 18 U.S.C. § 1836)

38. Plaintiff incorporates the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

39. As set forth above, Scott and CSI stole Private Identity's Proprietary Trading Algorithms in violation of 18 U.S.C. § 1836.

40. None of the Defendants has any ownership, right, entitlement, or license to or in the Proprietary Trading Algorithms or any of Private Identity's other trade secrets embedded in its source code that uses the algorithms.

41. Private Identity's Proprietary Trading Algorithms constitute a trade secret because they are a form of "financial, business, scientific, technical, economic, or engineering information" under 18 U.S.C. § 1839(3). In addition, they derive their independent economic value from remaining confidential, as the dissemination of the algorithms erodes the market signals uncovered by the algorithms. Further, the Proprietary Trading Algorithms are not generally known or readily ascertainable by third parties.

42. Private Identity made reasonable efforts to maintain the secrecy of its Proprietary Trading Algorithms and the source code that implemented them. Such efforts included, without limitation, the implementation of multiple, layered technical, physical, and contractual controls to maintain the secrecy of its trading algorithms and related source code hosted on Server 20. Access to Server 20 was restricted to a small set of identified, authorized users with a business

need to know, and all such users were bound to written non-disclosure agreements with strict confidentiality obligations.

43. The Proprietary Trading Algorithms are algorithms used to trade securities listed on national exchanges or across multiple states.

44. Defendants knew that they were not authorized to take Private Identity's Proprietary Trading Algorithms, knew that the trading algorithms were to be kept confidential, and knew that the information constituted Private Identity's trade secrets.

45. After stealing Private Identity's trade secrets, Defendants Scott and CSI retained a third-party contractor to create derivative works from the trade secrets, which constitutes a further violation of Private Identity's trade secrets.

46. Defendants then used, directed, and orchestrated the use of Private Identity's Proprietary Trading Algorithms to trade stocks, cryptocurrency, and other assets.

47. Defendants knowingly assisted and, upon information and belief, orchestrated the creation of the Quant Trading Entities for the purpose of further developing, profiting, and exploiting the stolen Proprietary Trading Algorithms.

48. Defendants' conduct violated and continues to violate the law regarding the misappropriation of trade secrets.

49. Defendants knew that their unauthorized use of the trade secrets would cause injury to Private Identity.

50. Private Identity has no adequate remedy at law in that the harm set forth above cannot be fully compensated in monetary damages because the confidentiality of the trading algorithm has been lost.

51. As a direct and proximate result of Defendants' misappropriation of the trade

secrets, Private Identity has suffered damages.

WHEREFORE, Plaintiff prays that judgment be entered in its favor and that the Court grant the following relief against all Defendants, jointly and severally:

A. An injunction prohibiting Defendants and any individuals or entities acting in concert or participation with them from further use of Plaintiff's trade secrets and intellectual property pursuant to 18 U.S.C. § 1836;

B. An order requiring Defendants to return all of Plaintiff's trade secrets in their possession or under their control, including Plaintiff's Proprietary Trading Algorithms;

C. An order requiring Defendants to maintain the confidentiality of Plaintiffs' Proprietary Trading Algorithms pursuant to 18 U.S.C. § 1835;

D. Civil seizure of Server 20 pursuant to 18 U.S.C. § 1836(b)(2);

E. Compensatory damages;

F. Disgorgement;

G. Exemplary damages under 18 U.S.C. § 1836;

H. Pre- and post-judgment interest;

I. Costs;

J. Reasonable attorneys' fees pursuant to 18 U.S.C. § 1836; and

K. Such other and further relief as the Court may deem appropriate.

## COUNT 2
**(Violation of the Maryland Uniform Trade Secrets Act: Md. Com. Law § 11-1201 *et seq.*)**

52. Plaintiff incorporates the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

53. As set forth above, Defendants stole Private Identity's Proprietary Trading

Algorithms.

54. Private Identity's Proprietary Trading Algorithms constitute a trade secret because they are information that derives its independent economic value from remaining confidential, as the dissemination of the algorithms erodes the market signals uncovered by the algorithms. Further, the Proprietary Trading Algorithms are not generally known or readily ascertainable by third parties.

55. Private Identity took reasonable efforts to keep the Proprietary Trading Algorithms confidential, including, without limitation, the implementation of multiple, layered technical, physical, and contractual controls to maintain the secrecy of its trading algorithms and related source code hosted on Server 20. Access to Server 20 was restricted to a small set of identified, authorized users with a business need to know, and all such users were bound to written non-disclosure agreements with strict confidentiality obligations.

56. Defendants Scott and CSI, together with co-conspirators Brian Streit and Jorge Valdes, knew that they were not authorized to take Private Identity's Proprietary Trading Algorithms, knew that the trading algorithms were to be kept confidential, and knew that the information constituted Private Identity's trade secrets.

57. After taking Private Identity's trade secrets, Defendants retained a third-party contractor to create derivative works from the trade secrets, which constitutes a further violation of Private Identity's trade secrets.

58. Defendants knowingly assisted and, upon information and belief, orchestrated the creation of the Quant Trading Entities for the purpose of further developing, profiting, and exploiting the stolen Proprietary Trading Algorithms.

59. Defendants' conduct violated the law regarding the misappropriation of trade

11

secrets.

60. Defendants knew that their unauthorized use of the trade secrets would cause injury to Private Identity.

61. Private Identity has no adequate remedy at law in that the harm set forth above cannot be fully compensated in monetary damages because the confidentiality of the trading algorithm has been lost.

62. As a direct and proximate result of Defendants' misappropriation of the trade secrets, Private Identity has suffered damages.

WHEREFORE, Plaintiff prays that judgment be entered in its favor and that the Court grant the following relief against the Defendants, jointly and severally:

- A. An injunction prohibiting Defendants and any individuals or entities acting in active concert or participation with Defendants from further misappropriating Plaintiff's trade secrets;
- B. An order requiring Defendants to return all of Plaintiff's trade secrets in their possession or under their control, including Plaintiff's Proprietary Trading Algorithms;
- C. Compensatory damages;
- D. Disgorgement;
- E. Exemplary damages pursuant to Md. Com. Law § 11-1203(d);
- F. Pre- and post-judgment interest;
- G. Costs; and
- H. Such other and further relief as the Court may deem appropriate.

## COUNT 3
**(Copyright Infringement: Violation of 17 U.S.C. § 106)**

63. Plaintiff incorporates the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

64. As set forth above, Private Identity is the owner of U.S. Copyright Registration No. TX 9-524-048 for the source code that also includes its Proprietary Trading Algorithms.

65. Accordingly, Private Identity possesses all of the exclusive rights to the copyrighted code pursuant to 17 U.S.C. § 106.

66. Private Identity has not licensed or granted any rights or entitlement to any Defendant or any other persons or entities to copy, reproduce, make derivative works of, license, or distribute the copyrighted code.

67. On information and belief, Defendants reproduced or made copies of Private Identity's copyrighted source code.

68. In addition, Defendants created derivative source code based on Private Identity's copyrighted source code.

69. Defendants also distributed and/or licensed copies of the Plaintiff's copyrighted source code, again without any right, license, or entitlement to do so.

70. As a direct and proximate result of Defendants' infringement of Private Identity's copyright to the source code, Private Identity LLC has suffered damages.

WHEREFORE, Plaintiff prays that judgment be entered in its favor and that the Court grant the following relief against the Defendants, jointly and severally:

A. An injunction prohibiting Defendants and any individuals or entities acting in active concert or participation with Defendants from further infringing on Plaintiff's copyright;

B. An order requiring Defendants to destroy the infringing copies of Plaintiff's

copyrighted materials;

C. Compensatory damages, including lost profits;

D. Disgorgement;

E. Pre- and post-judgment interest;

F. Costs; and

G. Such other and further relief as the Court may deem appropriate.

## COUNT 4
### (Civil Conspiracy)

71. Plaintiff incorporates the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

72. For the reasons explained above, Defendants Scott and CSI acted in concert and participation with each other by agreement or understanding.

73. The purpose and intent of their confederation was to commit one or more unlawful and tortious acts against Private Identity, as alleged in this Complaint, including copyright infringement and Scott's breach of fiduciary duty.

74. As a result of their conspiring to commit such unlawful and tortious acts, and having committed such unlawful and tortious acts as they conspired to do, Private Identity suffered damages.

WHEREFORE, Plaintiff prays that judgment be entered in its favor and that the Court grant the following relief against the Defendants, jointly and severally:

A. Compensatory damages, including lost profits;

B. Disgorgement;

C. Punitive Damages;

D. Pre- and post-judgment interest;

E. Costs; and

F. Such other and further relief as the Court may deem appropriate.

### COUNT 5
### (Breach of Fiduciary Duty)
### (Scott Streit)

75. Plaintiff incorporates the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

76. Scott, during the time he was a member and officer of Private Identity, owed a fiduciary duty to the company not to steal from it and not to disclose its confidential information.

77. As set forth above, Scott breached his fiduciary duties to Private Identity by stealing the company's proprietary trading algorithm and using it to compete with Private Identity.

78. As a result of Scott's breaches of his fiduciary duties, Private Identity has incurred damages.

WHEREFORE, Plaintiff prays that judgment be entered in its favor and that the Court grant the following relief against Scott:

A. Compensatory damages in an amount to be proven at trial;

B. Punitive damages;

C. Pre- and post-judgment interest;

D. Costs;

E. Reasonable attorneys' fees; and

F. Such other and further relief as the Court may deem appropriate.

## **JURY TRIAL DEMANDED**

Plaintiff demands a jury trial of this matter.

        Respectfully submitted,

        SHULMAN ROGERS, P.A.

        */s/ Joshua A. Glikin*
        Joshua A. Glikin, Esq. (Fed. Bar No. 26852)
        JGlikin@shulmanrogers.com
        1215 E. Fort Avenue, Suite 301
        Baltimore, Maryland 21230
        Telephone: (410) 520-1340
        Fax: (301) 230-2891

        John Troost, Esq. (Fed. Bar No. 20698)
        jtroost@shulmanrogers.com
        12505 Park Potomac Avenue, Sixth Floor
        Potomac, Maryland 20854
        Telephone: (301) 230-5200
        Fax: (301) 230-2891

        *Attorneys for Plaintiff, Private Identity LLC*