**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| PRIVATE IDENTITY LLC, | * | |
| Plaintiff, | * | Civil Action No. 8:25-cv-03855-PX |
| v. | * | |
| SCOTT EDWARD STREIT *et al.*, | * | |
| Defendants. | * | |

***

**MEMORANDUM OPINION**

Pending is Defendant Scott Edward Streit ("Streit")'s motion to dismiss or alternatively to compel arbitration, ECF No. 9, and Defendant Computer Science Innovation LLC ("CSI")'s motion to dismiss for lack of personal jurisdiction, ECF No. 10. The motions are fully briefed, and the Court needs no hearing. *See* Loc. R. 105.6. For the following reasons, the motions are denied.

## I. Background

In 2017, Streit and his former business partner, Michael Pollard ("Pollard"), formed Private Identity LLC ("Private Identity" or "the LLC"), pursuant to the Delaware Limited Liability Act. *Id*. ¶¶ 4, 11–12; *see also* ECF No. 9-4 at 2. The purpose of Private Identity is to develop and implement proprietary stock trading algorithms ("Trading Algorithms") and source code used to maximize profitability of stock trades. ECF No. 1 ¶¶ 4, 12.

In 2019, Private Identity amended the LLC's Operating Agreement, which remains in full force. ECF No. 9-4. The Amended Operating Agreement defines as "members" of the LLC those who hold a percentage interest in the LLC and further specifies each member by class and capital contributions. *Id.* at 1, 5–7, & 25. The Amended Operating Agreement also establishes the

respective responsibilities and powers of the LLC's Manager, Pollard, alongside the parameters for liquidating, dissolving or distributing the member interests in the LLC. *Id*. at 2–7, 15.

Streit wore many hats at Private Identity. He was certainly a member who maintained an investment interest in the LLC. *See* ECF No. 9-4 at 25. But he also worked as the Chief Science Officer and next as the Chief Technology Officer. ECF No. 1 ¶ 11. As a Private Identity employee, Streit helped design, implement, and maintain the LLC's proprietary Trading Algorithms and source code. *Id*. ¶ 13. He was also responsible for storing both on a secure server that was physically located in his home and ensuring the Trading Algorithms and source code were only accessible to specifically authorized Private Identity employees and contractors. *Id*. ¶¶ 13, 16.

Also, during the same time, Streit was the owner of a separate LLC, Defendant CSI, a limited liability company organized under the laws of Texas. ECF No. 1 ¶ 6. Streit was CSI's majority member, and CSI operated in Maryland while Streit was working for Private Identity. *Id.* ¶¶ 9–10, 28.

Despite Streit's obligation to maintain strict privacy and security controls over the Trading Algorithms and source code, ECF No. 1 ¶ 18, Streit had been using the Trading Algorithms since late 2021 to trade on one or more accounts without Private Identity's permission. *Id.* ¶ 19. Streit, through CSI, also hired Private Identity's computer programmer to help him use the Trading Algorithms and source code for profit. *Id.* ¶¶ 27–37. Streit's unauthorized trades, according to Private Identity, "significantly eroded [the LLC's] market advantage," because it put the Trading Algorithms into the stream of commerce. *Id.* ¶ 20.

On July 26, 2023, Private Identity fired Streit for using the Trading Algorithms to trade stocks for himself, CSI, and other third parties without Private Identity's permission. ECF No. 1 ¶¶ 19–21. Private Identity also ordered Streit to return all company property, including the server

on which Streit stored the Trading Algorithms and source code. *Id.* ¶ 22. Streit, in turn, refused and falsely claimed that he did not have the server. *Id.* ¶¶ 23–24.

From this, Private Identity sues Streit and CSI for violations arising from the alleged theft of the Trading Algorithms, source code, and server, in violation of the Defendant Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq*. (Count I); the Maryland Uniform Trade Secrets Act ("MUTSA"), Md. Code Ann., Com. Law § 11-1202, *et seq*. (Count II); and for copyright infringement in violation of 17 U.S.C. § 106 (Count III). Private Identity also brings a common law civil conspiracy claim (Count IV); and as to Streit only, a breach of fiduciary duty claim (Count V). ECF No. 1. ¶¶ 38–78.

In response, Streit contends the claims must be arbitrated pursuant to the Amended Operating Agreement. ECF No. 9. And CSI maintains this Court lacks personal jurisdiction over it. ECF No. 10. The Court takes each motion in turn.

## II. Analysis

### A. Motion to Dismiss or Compel Arbitration

Streit principally argues that the arbitration provision included within the Amended Operating Agreement that governs the membership and operations of the LLC compels arbitration of the claims. ECF No. 9-1 at 8–10; *see also* ECF No. 9-4 at 2. In response, Private Identity avers the arbitration provision does not reach the claims against Streit and the LLC but instead covers only disputes between the members or between a member and the manager for the LLC. ECF No. 17 at 4–5 (citing ECF No. 9-4 at § 16(f)).

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, governs the Court's review of a motion to compel arbitration. To prevail, the movant must show the existence of (1) a valid arbitration agreement; (2) a dispute that falls within the scope of that agreement; (3) the

relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of the defendant to arbitrate the dispute. *Adkins v. Labor Ready, Inc*., 303 F.3d 496, 500–01 (4th Cir. 2002). Whether a particular dispute is covered by an arbitration provision remains a matter of contract interpretation. *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc*., 96 F.3d 88, 92 (4th Cir. 1996) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co*., 363 U.S. 574, 582 (1960)). All doubts about the scope of an arbitration provision must resolve in "'favor of arbitration,'" *Levin v. Alms and Assocs., Inc.,* 634 F.3d 260, 266 (4th Cir. 2011) (quoting *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989)), "'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Am. Recovery Corp*., 96 F.3d at 92 (quoting *United Steelworkers of Am.*, 363 U.S. at 582–83).

In support of his motion, Streit argues that claims here fall within the scope of the arbitration provision included within the Amended Operating Agreement. ECF No. 9-1 at 8–10. That provision reads:

> [A]ny dispute [that] arises between the Members and/or the Manager under or relating to this Agreement or relating to the LLC's business or internal affairs that cannot be resolved voluntarily or by mediation . . . shall [be] resolve[d] . . . by arbitration . . . .

ECF No. 9-4 at §16(f). Streit emphasizes that because the lawsuit "relates to the LLC's business or internal affairs," then the claims against him fall within the command to arbitrate. ECF No. 9-1 at 8–10.

Private Identity responds that the claims do not concern a dispute arising between members and/or managers as the LCC is neither; thus, the arbitration clause does not reach this case. ECF No. 17 at 5. The Court agrees with Private Identity but for a different reason.

Private Identity does not sue Streit for his acts or omissions as a *member* of the LLC. *See* ECF No. 1 ¶¶ 38–74. Rather, Streit is sued for acts taken as an employee and Officer responsible for the day-to-day development of the Trading Algorithms and source code.[1] *Compare* ECF No. 1 ¶¶ 38–74 (Counts I through IV bringing claims against "Defendants" and "Defendants Scott and CSI") *with id.* ¶¶ 75–78 (Count V bringing breach of fiduciary claim against "Scott, during the time he was a member of Private Identity"). Put differently, the alleged misconduct depends in no way on his status as a "member" with a membership interest in the LLC, or on any acts arising from his role as a member with relation to the "LLC's business or internal affairs." ECF No. 19-4 at § 16(f). Thus, while the claims may arguably relate to the "business" or "internal affairs" of Private Identity, they do not concern actions Streit took in his capacity as a "member," and do not concern any dispute between Streit, another member, or Pollard as manager. Thus, the arbitration provision in the Amended Operating Agreement does not reach the claims. Streit's motion to dismiss or alternatively compel arbitration will be denied.

The Court next turns to CSI's motion to dismiss for lack of personal jurisdiction.

**B. Motion to Dismiss CSI for Lack of Personal Jurisdiction**

CSI next contends that this court lacks personal jurisdiction over the Texas based LLC because it has never done business in Maryland. ECF No. 10-1 at 7–15. A court may not hear any claim against parties for whom personal jurisdiction is lacking. *Lightfoot v. Cendant Mortg. Corp.*, 500 U.S. 82, 93–95 (2017). At the pleading stage, courts must construe the complaint facts as true

[1] Arguably, however, Private Identity brings Count V, the "breach of fiduciary" claim against Scott as a "member" of the LLC for breaching the duty he owed to "not disclose confidential information" held by the LLC. *See* ECF No. 1 ¶ 76–77. The Amended Operating Agreement requires its members to "maintain in confidence (i) all information relating to the LLC; and (ii) all information in the possession or control of the LLC that is reasonably identified as confidential in the LLC's records or that the Member knows or reasonably should know requires confidentiality in the LLC's best interest." ECF No. 9-4 at § 15. However, according to the Amended Operating Agreement, if Private Identity intends to sue Streit for breaching this provision, it must bring the suit "in the courts of the State of Delaware," *Id.* § 17(d), and it will be up to that court to determine whether that cause of action is subject to the arbitration provision. The Court will discuss the disposition of this Count at the first scheduling conference.

and most favorably to the plaintiff to determine whether the complaint makes plausible the existence of personal jurisdiction. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003); *Hawkins v. i-TVDigitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). When personal jurisdiction is questioned, the plaintiff must prove its existence. *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020) (quoting *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016)).

Private Identity singularly argues that the Court retains specific personal jurisdiction over CSI pursuant to Maryland's long arm statute. ECF No. 22 at 3–5. A court maintains specific personal jurisdiction if "(1) the exercise of jurisdiction is authorized under the state's long-arm statute pursuant to Rule 4(k)(1)(a) of the Federal Rules of Civil Procedure; and (2) the exercise of jurisdiction conforms to the Fourteenth Amendment's due process requirements." *Under Armour, Inc. v. Battle Fashions, Inc.*, 294 F. Supp. 3d 428, 432 (D. Md. 2018) (citing *Carefirst,* 334 F.3d at 396). Although satisfaction of Maryland's long arm statute also satisfies due process, *see Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory*," 283 F.3d 208, 212–13 (4th Cir. 2002), the reverse is not necessarily true, *Dring v. Sullivan*, 423 F. Supp. 2d 544, 545(D. Md. 2006)(citing *Krashes v. White*, 341 A.2d 798, 804 (Md. 1975)) ("Perhaps fact situations will arise which will be deemed outside the scope of the Maryland 'long arm' statute, although there may be a constitutional basis for jurisdiction over the nonresident defendant."). Thus, the Court begins with whether a plaintiff satisfies Maryland's long arm statute, for if the answer is no, then the Court need not go any further in the analysis. *See Orbita Telecom SAC v. Juvare LLC*, 606 F. Supp. 3d 240, 251 (D. Md. 2022).

The long arm statute enumerates six circumstances where a court may exercise specific personal jurisdiction over a defendant. *See* Md. Code Ann., Cts. & Jud. Proc. § 6-103(b). The

only basis on which Private Identity proceeds is subsection (b)(3), where a defendant "[c]auses tortious injury in the State by an act or omission in the State." ECF No. 22 at 3 (citing Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(3)). In support, Private Identity points to the Complaint allegations which reflect that "CSI was located in Maryland during the relevant period;" that it participated in the theft of the information on the server while the server was in Maryland; and that it hired one of Private Identity's former code developers to exploit the stolen source code. *Id.* (citing ECF No. 1 ¶¶ 9–10, 17, 26–27). Additionally, Private Identity appends to its response evidence that during the years in which the Defendants allegedly pilfered the Trading Algorithms and source code, CSI had a presence in Maryland. ECF Nos. 22-1, 22-2, & 22-3.

CSI, through Streit's affidavit, responds that CSI was formed as a Texas LLC in 2009, that Streit is its "100% owner," and the LLC has always resided in Texas. ECF No. 14-1 ¶ 16. Streit also attests that he personally moved from Maryland to Texas in July of 2023. *Id.* ¶ 18, but that nonetheless, CSI did not conduct "business" in Maryland prior to July 2023, *Id.*, even though its sole owner lived and worked in that very state.

At the motion to dismiss stage, Private Identity plausibly avers that CSI committed tortious injury in this state while present in the state. Indisputably, Streit wholly owns CSI. Further, the Complaint makes plausible CSI's participation in the taking or misusing Private Identity's Trading Algorithm and source code, and hiring Private Identity's code developer, all before Streit's relocation. *See* ECF No. 1 ¶ 17 (Streit kept the material on the server in his Maryland home); *id.* ¶ 19 (Streit using Trading Algorithms in 2021 and 2022); *id.* ¶ 27 (CSI retained the services of "Private Identity's former code developer for purposes of using the stolen code"). This is sufficient to make plausible that CSI committed tortious injury while located in Maryland.

Nor does the exercise of personal jurisdiction at this stage offend due process. The Due Process Clause requires that CSI maintain sufficient "'minimum contacts'" with the forum state such that the maintenance of the suit "'does not offend traditional notions of fair play and substantial justice.'" *Carefirst*, 334 F.3d at 396 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). CSI does not meaningfully contend that if the Court found at the pleading stage the existence of specific personal jurisdiction, it should nonetheless dismiss on due process grounds. *See* ECF No. 10 & ECF No. 26. At best, Streit obliquely argues that the Court would "violate due process" if it based a finding of specific personal jurisdiction on the Complaint allegations. ECF No. 10 at 15.

The Court disagrees. For one, Maryland's long arm statute is largely coextensive with the constitutional limits of personal jurisdiction such that the two analyses substantially overlap. *See Bradley v. DentalPlans.com.*, 617 F. Supp. 3d 326, 333 (D. Md. 2022) (citing *Mylan Lab'ys, Inc. v. Akzo*, *N.V.*, 2 F.3d 56, 61 n.3 (4th Cir. 1993)); *see also Beyond Sys., Inc. v. Realtime Gaming Holding Co.*, LLC, 878 A.2d 567, 580 (Md. 2005) ("Because we have consistently held that the reach of the long arm statute is coextensive with the limits of personal jurisdiction delineated under the due process clause of the Federal Constitution, our statutory inquiry merges with our constitutional examination."). Moreover, particular to this case, the Court sees no constitutional impediment to exercising jurisdiction over CSI who had a business presence in Maryland, did its business through Streit in Maryland, and participated in the alleged theft of a server located in Maryland. At the pleading stage, the Court is satisfied that allowing the suit to proceed would not offend "notions of fair play and substantial justice." *Carefirst*, 334 F.3d at 396 (citation omitted).

Accordingly, and for now, the motion to dismiss for lack of personal jurisdiction is denied.

That said, the Court will revisit this issue, upon renewed motion, at the close of discovery. The Court recognizes that the parties have not yet "had a fair opportunity to develop and present the relevant jurisdictional evidence," *Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 196–97 (4th Cir. 2018). *See also Bradley v. DentalPlans.com*., 617 F. Supp. 3d 326, 333 (D. Md. 2022) ("A threshold finding that personal jurisdiction exists does not finally settle the issue; the plaintiff must prove the existence of jurisdiction by a preponderance of the evidence at a pre-trial hearing or at trial."). Thus, "when a fuller record is presented," the Court can better assess whether Private Identity has met its evidentiary burden of establishing personal jurisdiction. *Sneha Media*, 911 F.3d at 197.

## III. Conclusion

For the foregoing reasons, Scott Streit's motion to dismiss or compel arbitration, at ECF No. 9, and Computer Science Innovation LLC's motion to dismiss for lack of personal jurisdiction, at ECF No. 11, are DENIED. A separate Order follows.

09/8/2026
Date

/s/
Paula Xinis
United States District Judge